IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Criminal No. |
| | : | |
| v. | : | |
| | : | VIOLATION: |
| | : | |
| LARRY M. BRUNI, | : | 18 U.S.C. § 1347 |
| | : | (Health Care Fraud); |
| Defendant. | : | 18 U.S.C. § 2 (Causing an Act to be |
| | : | Done). |

## INFORMATION

The United States Attorney informs the Court:

## INTRODUCTION

At various times relevant and material to this Information:

1. Medicare was a government sponsored health insurance program for individuals 65 years and older, for certain disabled individuals, and for Social Security recipients. The program covered specified in-hospital and out-patient medical services, doctors' services, and certain medical supplies.

2. A senior citizen or disabled person who was eligible for Medicare could participate by enrolling in the Medicare program. Medicare typically paid about 80% of the cost of treatment by a Medicare approved physician with other insurance providers or the patient paying the other 20%.

3. The Medicare program was primarily funded through appropriations from the United States Treasury. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), formerly known as the Health Care Financing Administration.

4. Medicare was a "health care benefit program" as defined in 18 U.S.C. Section 24(b) because it was a public plan or contract, affecting commerce under which medical benefits, items, and services were provided to individuals.

5. Medicare reimbursed health care institutions and professionals such as physicians on a "fee for service" basis. Medicare required that the provider actually perform the services billed to Medicare; providers were not allowed to bill for services not provided.

6. The defendant, LARRY M. BRUNI, was a licensed physician in the District of Columbia; Medicare allowed BRUNI to provide services to Medicare recipients and to bill Medicare for services actually rendered to Medicare recipients.

7. Reteplase was a drug that was used, ideally within the first three hours, for patients experiencing acute myocardial infarction (commonly referred to as a "heart attack") in a hospital's emergency room; Reteplase was an emergency, first-aid, one-time application for those patients in cardiac arrest, as it is a blood thinner and clot breaker. Normally, the patients were admitted to the hospital, in a emergency room; thus, Medicare saw billings for Reteplase from hospitals under Part A of Medicare. Medical literature also recognized an "off label" use for Reteplase, that being to clear an intravenous tube into a patient, such as a central line.

## COUNT ONE

## (HEALTH CARE FRAUD)

8. Beginning in or about October 2001 and continuing until in or about March 2003, the defendant, LARRY M. BRUNI, devised and executed a scheme to defraud and aided and abetted a scheme to defraud the Medicare health benefit program of money through submission

of false claims.

## Purpose of the Scheme and Artifice

9. It was a purpose of the scheme and artifice to defraud that the defendant, LARRY M. BRUNI, and others would fraudulently obtain money for services which had not been rendered.

## The Scheme

10. It was part of the scheme to defraud that during the relevant period (October 2001 to March 2003), the defendant LARRY M. BRUNI and another person who assisted the defendant BRUNI in the financial aspect of his medical practice billed Medicare using the defendant BRUNI's name and Medicare number, for services involving Reteplase injections. The defendant BRUNI never administered Reteplase injections to any patient.

11. It was further part of the scheme to defraud that the claims for the defendant LARRY M. BRUNI's services of Reteplase injections involved two patients - for one, the defendant BRUNI allegedly injected Reteplase three times; for the other patient, the defendant BRUNI allegedly injected Reteplase 185 times. These claims charged Medicare for approximately $520,000 for the 188 Reteplase injections. If allowed, Medicare would have paid 80%, or approximately $423,800. However, Medicare did not allow all of the claims. Of these 188 Reteplase injection claims, Medicare denied payment for approximately 69 and paid about 119.

12. It was further a part of the scheme to defraud that the defendant LARRY M. BRUNI, due to the false claims submitted to Medicare, caused Medicare to pay him $154,832 for the Reteplase injections, services which were never provided by the defendant BRUNI.

13. It was further a part of the scheme to defraud that based on these false claims,

Medicare provided payment checks made payable to Larry M. Bruni, M.D., and all but one of these Reteplase payment checks were deposited into bank accounts under the account name of, "Larry M. Bruni, M.D." 90% of the money Medicare paid to the defendant BRUNI during the relevant time period was for either non-existent Reteplase injections or non-existent services to one of the Reteplase patients.

14. It was further a part of the scheme to defraud that during the relevant period in which Medicare paid for the Reteplase claims, the defendant LARRY M. BRUNI and the other person used the bank accounts (funded by the Reteplase checks) to pay for their personal expenses and the expenses of the defendant BRUNI's medical practice. These Medicare payments allowed the defendant BRUNI and the other person to pay the rent on their home and business, to pay utilities, medical bills, and to pay for other personal bills and bills of the medical practice.

15. Between in or about October 2001 until in or about March 2003, in the District of Columbia and elsewhere, the defendant LARRY M. BRUNI, knowingly and willfully devised and executed a scheme to defraud and aided and abetted a scheme to defraud a health care benefit program, namely Medicare, and to obtain from Medicare, money under the custody and control

of Medicare, by fraudulent pretenses, representations, and promises, namely, false claims, in connection with the delivery of, and payment for, health care benefits, items, and services.

**(Health Care Fraud, and Causing an Act to be Done,
in violation of Title 18, United States Code, Sections 1347 and 2).**

KENNETH L. WAINSTEIN

United States Attorney
for the District of Columbia


By: _____
VIRGINIA CHEATHAM
Assistant United States Attorney
D.C. Bar # 411980
United States Attorneys Office
Fraud and Public Corruption Section
555 4th Street, N.W.
Washington, D.C.  20530
(202) 514-9732